**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DONALD F. GLOSSENGER, SR.** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.:** 0 6 - 2 8 7 |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| **GREEN VALLEY PAVILION** | : | |
| **NURSING HOME** | : | |
| **A Delaware Corporation** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## COMPLAINT

### PARTIES

1.     Plaintiff, Donald F. Glossenger, Sr. (hereinafter "Plaintiff" or "Mr. Glossenger"), is a resident of the State of Delaware, and at all times relevant to this Complaint resided at 245 Kindling Drive, Felton, Delaware 19943.

2.     Defendant, Green Valley Pavilion (hereinafter "Defendant" or "Green Valley") is a Delaware corporation doing business in the State of Delaware, and is subject to service through its Human Resources Department at 3034 South DuPont Boulevard, Smyrna, DE 19977. Green Valley is a nursing home, providing housing and medical services to elderly patients.

### JURISDICTION

3.     The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal laws which prohibit discrimination against employees on the basis of age, in the terms, conditions, and privileges of employment, and which prohibit retaliation against an employee for exercising such rights under Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (hereinafter "Title VII"), the Age Discrimination in Employment Act (hereinafter "ADEA" or "the Act"), 29 U.S.C. § 621 *et seq*., and to secure protection and redress deprivation of similar rights secured by 19 Del. C. § 711, and is founded on the existence of a federal question arising under 28 U.S.C. Sections 1331 and 1343(4). An additional jurisdictional basis for Plaintiff's state law claims exists under the principles of pendant and supplemental jurisdiction and 28 U.S.C. § 1367.

4.     Plaintiff exhausted all administrative remedies before bringing this action, and received a Right to Sue letter issued by the Delaware Department of Labor. (Attached hereto as Ex. A).

## FACTUAL BACKGROUND

5.     Mr. Glossenger is presently seventy one (71) years old.

6.     He began his employment with Green Valley in 1998 as a maintenance helper.

7.     During the course of his employment, Mr. Glossenger was promoted to Maintenance Director. In this position, he oversaw the housekeeping, laundry and maintenance functions at Green Valley.

### *a. Green Valley's First Termination of Mr. Glossenger*

8.     During the term of his employment with Green Valley, Mr. Glossenger was terminated two separate times.

9.     The first time was on June 6, 2004.

10.     However, this termination was not the beginning of Mr. Glossenger's troubles with the administration at Green Valley. In January 2004, Mr. Glossenger was

2

hospitalized for a brief period of time. It was upon his subsequent release and his return to work that he began to be treated differently by the administration at Green Valley. Simply stated, it was at this time that Green Valley grew concerned about Mr. Glossenger's age and began to conspire to terminate him. Their concerns of his age were rooted in their concerns of health problems and associated medical and health costs that go with those problems.

11.    Mr. Glossenger's problems began with Mary Casper. Prior to his hospitalization the two had a very good working relationship. However, following his return to work, Ms. Casper was noticeably distant and short with Mr. Glossenger. She also began to micromanage Mr. Glossenger's every move. For instance, prior to his hospitalization, Mr. Glossenger was always in charge of creating his own schedule of tasks to accomplish. However, at this point, Ms. Casper no longer permitted Mr. Glossenger the discretion to set up his schedule and started giving him a list of tasks to accomplish on a daily basis.

12.    Ms. Casper also publicly reprimanded and humiliated Mr. Glossenger in front of other employees at meeting on May 15, 2004.

13.    With respect to Mr. Glossenger's medical conditions, Ms. Casper began asking employees about Mr. Glossenger's health behind his back. She even went so far as to call Mr. Glossenger's wife. She boldly and callously informed Mrs. Glossenger that Mr. Glossenger had signs of Alzheimer's disease.

14.    On May 24, 2004, Mr. Glossenger went on vacation. During his absence, Green Valley hired and individual who, upon information and belief, was less that 40

3

years old and/or was substantially younger than Mr. Glossenger, to re-place Mr. Glossenger as Director of Maintenance.

15. The day that Mr. Glossenger returned to work, Ms. Casper to him that Green Valley was going to permit Mr. Glossenger to resign. Mr. Glossenger refused this instruction. Nevertheless, Mac McVey from Green Valley took Mr. Glossenger's ID badge and escorted Mr. Glossenger from the facility. Mr. Glossenger had been terminated.

16. The alleged reason that Mr. Glossenger was terminated from his employment on that date was that the facility received a poor report from state inspectors. Notwithstanding Green Valley's justification for his termination, Mr. Glossenger suspected that he was terminated due to age discrimination.

17. His suspicion was based upon the fact that he was operating under and extremely tight budget, and the simple fact of the matter was: he did not have the manpower or the resources to take care of the facility. Green Valley knew that this was the case and it knew that with the existing resources, there was no way that Mr. Glossenger could maintain the facility properly.

18. Due to Green Valley's discrimination, Mr. Glossenger filed a charge of discrimination with the Delaware Department of Labor ("DDOL").

19. Shortly thereafter, Mr. Glossenger returned to Green Valley and spoke to Dr. Allen Seagal. He told Mr. Seagal of his filing and of his allegations of age discrimination. Dr. Seagal asked Mr. Glossenger how they could make the Charge of Discrimination "go away." Mr. Glossenger also learned that Ms. Casper was terminated

4

shortly after she terminated Mr. Glossenger, albeit not for her interaction with or
termination of Mr. Glossenger.

20.    Mr. Glossenger told Dr. Seagall that all he wanted was to have his job
back. Dr. Seagal obliged and Mr. Glossenger withdrew his initial Charge of
Discrimination.

### b. Continued Discrimination and Retaliation

21.    Despite getting his job back, Green Valley continued to discriminate
against Mr. Glossenger and also began to retaliate against him for his filing with the
DDOL. In essence, Green Valley had no intention of keeping Mr. Glossenger employed.
Cut to its core, Green Valley *knew* that they had to hire Mr. Glossenger back so that he
would withdraw his Charge of Discrimination. It knew that based upon its actions, Mr.
Glossenger had a very strong case of discrimination against them. Therefore, Green
Valley rehired Mr. Glossenger, not in good faith, but instead, so that it could create a
proper paper trail of discipline that it could utilize to justify a future termination of Mr.
Glossenger.

22.    Green Valley's management continued to treat Mr. Glossenger poorly.

23.    From the date of his rehire, June 18, 2004, until his ultimate termination
on December 20, 2004, Green Valley imposed two separate and unsupported written
warnings upon Mr. Glossenger. Each of which was for various offenses.

24.    On August 3, 2004, Mr. Glossenger was written up for a number of issues.
Each of these issues incorrectly stated Mr. Glossenger's actions and/or responses. In fact,
in each such incident, Mr. Glossenger took the correct actions, in direct contradiction to
the allegations.

5

25.    For example, following a state inspection, Mr. Glossenger was written up for an issue regarding his not employing a pest control company to control the flies in facility. It was alleged by Joyce Medkeff that he did not have the company coming out often enough. Medkeff alleged that they were only coming out once per month, when in fact they were coming out on a weekly to bi-weekly basis. Furthermore, when the state inspector raised his concerns regarding the flies, Mr. Glossenger took immediate action and corrected the problem. The state inspector even complimented Mr. Glossenger on his work.

26.    Ms. Medkeff also wrote up Mr. Glossenger for not securing an extension for the construction of handicapped ramps. However, Mr. Glossenger had, in fact, informed the surveyor's office and the state inspector's office of the need for an extension and they both indicated that such an extension would be fine. Moreover, when Mr. Glossenger contacted these individuals, he also relayed the information to none other than Ms. Medkeff herself.

27.    The next charge against Mr. Glossenger was that the locks did not work on a guard system. However, Mr. Glossenger provided Ms. Medkeff with a daily log that showed that they had been checked on a daily basis and that they were working. There were some that did not work, but these nonworking doors were so noted on the log.

28.    Mr. Glossenger was also written up because some of the call bells on one of the units were not working. The building had been struck by lightening the prior year and Mr. Glossenger told the, then, administrator about the call bells not working at that time. That administrator chose to fix one wing but not the others. This was not a decision made by Mr. Glossenger, yet he was written up for it.

6

29.    Ms. Medkeff also wrote up Mr. Glossenger for not fixing everything on a list that she gave on July 29, 2004. Mr. Glossenger repaired what he could with the resources that were available, but some of the repairs could not be made unless he had certain replacement parts. The responsibility for ordering those parts was with another individual. As a result, the repair of those items was delayed.

30.    Important as a backdrop to these alleged violations, Mr. Glossenger conducted his affairs at Green Valley at this time in the same manner in which he had always conducted them. However, now he was being held to a higher level of scrutiny and his work and conduct were being looked at through a microscope for any minor infraction possible, or anything that could be twisted and construed into being an infraction.

31.    Then on October 7, 2004, again, Mr. Glossenger was given another written discipline by Ms. Medkeff for more "job performance concerns." In this instance, the microscope was fixed on Mr. Glossenger's interaction with other employees.

32.    For instance, he was written up because Human Resources allegedly got reports that Mr. Glossenger was talking about his previous termination. Mr. Glossenger flatly denied this accusation with the exception of an individual who asked him about it. Mr. Glossenger replied by instructing that individual that he could not comment on the situation.

33.    Ms. Medkeff wrote Mr. Glossenger up for his instruction to the housekeepers to not assist the aides in their duties. Mr. Glossenger does not deny giving this instruction. However, as he explained, the housekeepers' duties do not consist of

7

such assisting the aides with their jobs. Mr. Glossenger explained to them that by doing this, the housekeepers were taking away time from doing their own assigned tasks.

34.    Ironically, in the next breath, Ms. Medkeff wrote up Mr. Glossenger for having his extra housekeepers raking the courtyard and pulling weeds. She stated that this was a violation because such work was not a duty of the housekeepers. Despite Ms. Medkeff's inconsistent stance on whether the housekeepers should or should not help with work that is outside of their job description, the fact of the matter is, Mr. Glossenger did not ask these extra housekeepers to weed or rake. Instead, he told Gary Langston to have one of the extras clean up the courtyard. Langston in turn instructed that the courtyard be swept, the tables wiped down and the trash emptied – all of which are housekeeping duties. Significantly, Mr. Glossenger never instructed a housekeeper to pull weeds or rake.

35.    Next, Ms. Medkeff wrote Ms. Glossenger up because he was "harassing" employees. Mr. Glossenger responded that there were employees who were taking too many smoking breaks, and also for not punching out while they left the facility for lunch, then coming back, punching out and taking an extra thirty minutes for lunch at the facility. Here, it is Mr. Glossenger's job to supervise these employees and to correct them for such abuses, which is exactly what he was doing. It is likely that had Mr. Glossenger ignored this behavior and not said anything to these employees, Ms. Medkeff would have written him up for *not* speaking to these employees.

36.    As is plainly visible, Mr. Glossenger was working under a Catch-22 situation: in order to keep his job, he could not reprimand employees; but a crucial part of his job was reprimanding employees who violate rules. Hence, whether he did or did not

8

reprimand the employees he would lose his job. Another example is with the housekeepers. Mr. Glossenger was disciplined for instructing a housekeeper to do only her job; yet he was also disciplined for allegedly instructing a housekeeper to perform functions outside of her job description.

37.     Finally, there was an issue with other employees that Ms. Medkeff alleges that Mr. Glossenger acted inappropriately. While Mr. Glossenger does not admit the inappropriate behavior, he contritely responded to Ms. Medkeff, "I apologize if you felt my conduct to an employee was inappropriate. I can only say that things have been very busy around here for all of us. I will make a point to be more respectful. If I should have to explain how to do something to an employee I will do my best to make them understand what is required of them."

38.     For the October 7, 2004 alleged infractions, Mr. Glossenger was punished with a three-day suspension.

### c. Green Valley's second termination of Mr. Glossenger

39.     On December 20, 2004, Mr. Glossenger arrived at work at 7:15 a.m. He immediately discovered that there was a problem with the heat in one wing of the facility. He directly commenced efforts to resolve the problem.

40.     Shortly thereafter, Mr. Glossenger discovered that the problem was a broken meter in the heating system.

41.     As Maintenance Director, Mr. Glossenger possesses a wide range of knowledge in the area of facilities maintenance. However, there are times when issues arise that require an advanced skill set in a particularized area of maintenance. This was

9

one such instance.    In addition, Mr. Glossenger does not possess the requisite qualifications to even be permitted to fix this problem.

42.    Realizing that he lacked both the expertise and the correct tools to resolve the problem with the heating system, Mr. Glossenger promptly contacted a heating contractor at 8:00 a.m., forty-five minutes after he first arrived at work.

43.    Mr. Glossenger also attempted to notify the administrator of the heating issue. However, at that time, the administrator of the facility was in a meeting, and Mr. Glossenger was previously instructed that if Green Valley management was involved in a meeting, that he as not to interrupt the meeting. Instead, Mr. Glossenger dutifully worked with the heating contractor to resolve the heating issue.

44.    The heating contractor, K & J Heating and Air Conditioning, ascertained that he also could not immediately solve the problem. This is because it was an issue that required the gas company to come out and resolve. Nevertheless, Mr. Glossenger and the contractor were able to configure the heating system so that heat was being delivered to the wing by approximately 9:00 a.m. As such, even though the problem had not been completely resolved at this point, Mr. Glossenger had accomplished all he could accomplish on his own.

45.    The gas company, Chesapeake Utilities, eventually arrived and replaced the broken meter by approximately 12:00 p.m. In regards to this entire issue, Mr. Glossenger correctly and efficiently: (1) ascertained the problem; (2) contacted the appropriate personnel to address the problem; (3) when it was determined that the problem could not be completely resolved in short order, an alternative, but temporary solution was devised and implemented so that the residents would not be without heat;

10

and finally (4) the problem had been completely resolved and a new meter installed within five hours from the moment that Mr. Glossenger became aware of the issue.

46. Despite Mr. Glossenger's proper handling of the heating problem on December 20, 2004, Green Valley terminated Mr. Glossenger on December 22, 2004. It concluded that his actions that day were a "Group III Offense" (as provided for in the Green Valley Pavilion Employee Handbook) for which termination is appropriate. Specifically, Green Valley contends that Mr. Glossenger's did not contact a contractor or notify an administrator of the issue in a timely fashion and that his failure in this regard constituted gross negligence of duty.

47. Thereafter, Mr. Glossenger filed another charge of Discrimination with the Delaware Department of Labor. A "No-Cause Determination and Dismissal with Corresponding Right to Sue Notice" was issued by the DDOL on January 31, 2006. (See Ex. A, attached hereto).

48. Mr. Glossenger also filed for unemployment compensation with the DDOL. Green Valley opposed his application, asserting that they terminated Mr. Glossenger for just cause in connection with his work –his handling of the heating issue on December 20, 2004.

49. The Appeals Referee disagreed with Green Valley and found that Mr. Glossenger was entitled to unemployment benefits. In particular, it was found that Mr. Glossenger "acted logically and with reasonable diligence to have the problem corrected." (See Ex. B, attached hereto).

11

## COUNT I
### *Violation of the Age Discrimination in Employment Act*

50.     Paragraphs 1 – 49 are incorporated and restated as if fully set forth herein.

51.     Mr. Glossenger was over the age of forty (40) at all relevant times to this complaint.

52.     The individuals who replaced Mr. Glossenger in his position were younger than age forty (40) and/or substantially younger than Mr. Glossenger and had less experience and inferior qualifications to Mr. Glossenger.

53.     Defendants also treated Mr. Glossenger differently than other similarly situated employees in terms of disciplining him, inquiring into his health, and scrutinizing his work at a higher level.

54.     In this regard, Mr. Glossenger was written up for incidents that either did not occur, were exaggerations of the truth, or which Mr. Glossenger had previously remedied.

55.     As such, Defendant disciplined and terminated Mr. Glossenger based upon his age.

56.     Defendant's violations of Plaintiff's rights under the Age Discrimination in Employment Act ("ADEA") were intentional and therefore done with malice and/or reckless indifference to Plaintiff's federally protected rights and were designed to further injure Plaintiff.

57.     As a result of Defendant's actions in violation of the ADEA, Plaintiff suffered and continues to suffer emotional distress, lost employment opportunities, lost wages and benefits, and other consequential damages.

12

## COUNT II
### *Retaliation*

58.    Paragraphs 1 – 57 are incorporated and restated as if fully set forth herein.

59.    Defendants repeatedly retaliated against Plaintiff after he filed a Charge of Discrimination based upon his age with the Delaware Department of Labor.

60.    For instance, Defendants disciplined Mr. Glossenger more harshly than they had prior to his Charge of Discrimination, scrutinized his work at a higher level, he was written up for incidents that either did not occur, were exaggerations of the truth, or for issues which Mr. Glossenger had previously and correctly remedied.

61.    As a result of Defendants' actions, Plaintiff suffered and continues to suffer from emotional distress, lost employment opportunities, lost wages and benefits, and other consequential damages.

## COUNT III
### *Breach of Covenant of Good Faith and Fair Dealing*

62.    Paragraphs 1 – 61 are incorporated and restated as if fully set forth herein.

63.    Immediately following Plaintiff's complaint of discrimination, Defendants began to scrutinize Plaintiff's job-related activities unfairly and as a result, he incurred more disciplinary write ups and was held to a higher level of scrutiny than other similarly situated employees.

64.    The actions of the Defendants constitute violations of the covenant of good faith and fair dealing implicit in every employment contract.

65.    As a result of Defendant's breach of the Covenant of Good Faith and Fair Dealing, Plaintiff suffered and continues to suffer from emotional distress, lost employment opportunities, lost wages and benefits, and other consequential damages.

## COUNT V
### *Violation of 19 Del. C. § 711*

66.     Paragraphs 1 – 65 are incorporated and restated as if fully set forth herein.

67.     Defendants' aforesaid actions constituted discrimination against Plaintiff on the basis of age in violation of 19 *Del. C.* § 711.

68.     Defendants' violations of Plaintiff's rights under 19 *Del. C.* § 711 were intentional and therefore done with malice and/or reckless indifference to his state-protected rights and were designed to further injure Plaintiff.

69.     As a result of Defendants' actions in violation of § 711, Plaintiff suffered and continues to suffer from emotional distress, lost employment opportunities, lost wages and benefits, and other consequential damages.

**WHEREFORE**, Plaintiff, Donald F. Glossenger, Sr. respectfully requests that this Court enter judgment against the Defendant and in his favor for damages suffered by him, due to Defendant's actions, including, but not limited to, compensatory damages, punitive damages, attorneys' fees, the costs of this litigation, pre- and post-judgment interest and such other further relief as this Court deems just and proper.

MARGOLIS EDELSTEIN

Timothy J. Wilson, Esquire (#4323)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680 Telephone
(302) 777-4682 Facsimile
*Attorney for Plaintiff*
*Donald F. Glossenger, Sr.*

Dated: May 2, 2006

14

**STATE OF DELAWARE**
**DEPARTMENT OF LABOR**
**DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION PROGRAM**

State Case No.: 050020067M

Donald Glosenger
245 Kindling Drive
Felton, DE 19943

vs.

Green Valley Pavilion
4 Ivy Brook Blvd.
Warminster, PA 18974-1700

**FINAL DETERMINATION AND RIGHT TO SUE NOTICE**

Pursuant to 19 <u>Del. C.</u> § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

### *No-Cause Determination and Dismissal with Corresponding Right to Sue Notice.*

In this case, the Department has completed its investigation and found that there is no reasonable cause to believe that an unlawful employment practice has occurred. The Department hereby issues a No-Cause Determination and Dismissal and provides the Charging Party with a Delaware Right to Sue Notice.

This No Cause determination is based on the following facts:
In this case of alleged employment discrimination Charging Party must be able to demonstrate that he was disparately treated based on his age and/or was retaliated against after participating in a protected activity with regard to his subsequent discipline/discharge. Charging Party was unable to offer substantive evidence to demonstrate disparate treatment as compared to similarly situated individuals accused of committing similar performance deficiencies. Charging Party was disciplined and discharged by individuals who were not involved or even employed by Respondent when Charging Party filed his original charge of employment discrimination which he withdrew. There is no evidence of disparate treatment or evidence of a causal connection between Charging Party's complaint and his discipline/discharge. Charging Party was discharged for not appropriately managing the failure of the heating system in Respondent's facility which cares for aged individuals.

See the attached Notice of Rights.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Program.

_____
Date issued

_____
Julie Klein Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

DOL Form C-12NC : 01/06

**EXHIBIT**

A

## NOTICE OF DELAWARE RIGHTS

*The Department of Labor Discrimination Unit provides the following excerpt from 19 Del. C. § 710, et seq. as information regarding the Delaware Right to Sue Notice. If you need legal advice, please seek your own legal counsel.*

### § 714. Civil action by the Charging Party; Delaware Right to Sue Notice; election of remedies.

(a)    A Charging Party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.

(b)    The Delaware Right to Sue Notice shall include authorization for the Charging Party to bring a civil action under this Chapter in Superior Court by instituting suit within ninety (90) days of its receipt or within ninety (90) days of receipt of a Federal Right to Sue Notice, whichever is later.

(c)    The Charging Party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A Charging Party is barred by this election of remedies from filing cases in both Superior Court and the federal forum. If the Charging Party files in Superior Court and in a federal forum, the Respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

## NOTICE OF FEDERAL RIGHTS

1.    If your case was also filed under federal law and resulted in a "No Cause" finding, you have additional appeal rights with the Equal Employment Opportunity Commission. Under Section 1601.76 of EEOC's regulations, you are entitled to request that EEOC perform a Substantial Weight Review of the DDOL's final finding. To obtain this review, you must request it by writing to EEOC within *15 days of your receipt* of DDOL's final finding in your case. Otherwise, EEOC will generally adopt the DDOL's findings.

2.    If your case was also filed under federal law, you have the right to request a federal Right to Sue Notice from the EEOC. To obtain such a federal Right to Sue Notice, you must make a written request directly to EEOC at the address shown below. Upon its receipt, EEOC will issue you a Notice of Right to Sue and you will have ninety (90) days to file suit. The issuance of a Notice of Right to Sue will normally result in EEOC terminating all further processing.

3.    Requests to the EEOC should be sent to:

Equal Employment Opportunity Commission
The Bourse, Suite 400
21 S. Fifth Street
Philadelphia, PA 19106-2515

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

UC-303
Document 60-06/96/02/01



DIVISION OF UNEMPLOYMENT INSURANCE
APPEALS
4425 N. MARKET STREET
P. O. BOX 9950
WILMINGTON, DE 19809

## REFEREE'S DECISION

CLAIMANT

Donald F. Glosenger
24 S. Kindling Dr.
Felton, DE 19943

APPEAL DOCKET NUMBER: 434077

SOCIAL SECURITY NO.: 148 26 4314

DATE OF CLAIM: 06-06-2004
ADDITIONAL CLAIM: 01-16-2005
DATE OF APPEAL: 02-01-2005

EMPLOYER

Green Valley Pavilion
Personnel
3034 S. DuPont Hwy
Smyrna, DE 19977

DATE OF HEARING: 02-23-2005

PLACE OF HEARING: Dover

DATE DECISION MAILED: 03-02-2005

### RIGHT OF FURTHER APPEALS

AS OF JANUARY 1, 2005, THE UNEMPLOYMENT INSURANCE APPEALS
BOARD NO LONGER EXISTS. THEREFORE, IN ORDER TO DETERMINE
YOUR APPEAL RIGHTS, YOU MAY WISH TO CONSULT AN ATTORNEY.

APPEARANCES: Bettina C. Ferguson, Appeals Referee; Donald F. Glosenger, Claimant; Timothy Wilson, Claimant's Attorney; Jeanne Fairbanks and Kathy Shott, Employer's Witnesses (by phone).

CLAIMS DEPUTY'S DETERMINATION: The claimant was discharged for just cause and is disqualified from benefits.

STATUTORY PROVISION INVOLVED: Title 19, Delaware Code, Section 3314(2).


**EXHIBIT**
B

## APPEAL DOCKET NO.:   434077

### SUMMARY OF EVIDENCE

The claimant was employed by Green Valley Pavilion from 1998 until June 2004 when he was discharged. After a month, he was returned to his position and was then terminated on December 22, 2004. At the time of the claimant's separation from employment, he was the director of maintenance and environmental services, and earned just over $22 an hour.

Jeanne Fairbanks, human resources, testified that the claimant had been discharged in June 2004 before Fairbanks worked there. The claimant was returned to his position a month later and then was terminated December 22, 2004.

There was a heating problem on December 22, 2004. The claimant reported to the facility early in the morning and did not tell the administrator that three quarters of the facility had no heat. He also did not call an outside vendor. This put the residents in jeopardy. It was considered group three, gross negligence.

The claimant had been written up in August 2004 for work performance concerns. The claimant was suspended for three days October 7, 2004 for management style, breach of confidentiality, and poor management of work assignments.

The claimant was in charge of the maintenance department, housekeeping, and laundry. He had an assistant in housekeeping and laundry and an assistant in maintenance. As part of the claimant's maintenance duties, he was required to fix things. It was appropriate for the claimant to check to see if they could fix a problem. If not, it was appropriate for him to call an outside vendor. Fairbanks provided no reason for this order of doing things and did not agree that it is to save money.

The claimant had the discretion to call an outside vendor and did not have to ask permission first. He would relay this information to Jim Caurt, the administrator.

Jim Caurt was not there when the claimant first came in the day the heat was off, but he was there at 8 a.m. The claimant arrived before Fairbanks. Fairbanks arrived at 7:15 a.m. Caurt told the claimant to call a contractor after Caurt learned there was a heating problem. The contractor was called in well past midmorning. When Caurt arrived at the facility that morning, he went right into a meeting. He did not know until 9:30 a.m. when probably he was notified by the claimant and the director of nursing. Fairbanks does not know when the issue was resolved, but it was late in the afternoon.

Fairbanks believes that some of the building got down into the 40's.

No one has ever been disciplined for calling a vendor to fix something.

## APPEAL DOCKET NO.:    434077

Kathy Shott, vice president for human resources for the company that owns the employer stated that the employer takes care of frail elderly persons. The claimant's conduct put these persons at risk. It was a matter of life and death.

The claimant testified that he worked for the employer for seven years. His position was never changed until Green Valley took over and added environmental services to his duties. The claimant has special licenses.

The claimant believes it was age discrimination and that the employer knew it did not have the right paper trail the first time it fired him. Therefore, he was rehired and the paper trail developed so that he could be let go.

The claimant testified that he was told he was terminated for failing to call in an outside contractor and failing to notify the administrator within the right time frame.

The claimant testified further that he called an outside contractor at 8:30 a.m. He called K & J Heating out of Smyrna.

The claimant arrived at work between 7:10 and 7:20 a.m. At that time, he was notified of the heating problem by the charge nurse. He immediately went to work on the problem. He checked the thermostats and the boilers. He had two helpers. They worked one and a half hours. Caurt was at the facility, but the claimant did not see him. All the burners were fired up, but they were burning at 50%. The contractor arrived around 8:50 a.m. The contractor put a meter on the gas line. This is something that the claimant is not permitted to do. It was discovered that the gas pressure was low. The contractor and the claimant then called Chesapeake Utilities. It was around 9:30 a.m. Chesapeake Utilities sent a crew and checked the meter. The meter had condensation restricting the flow to the building. They then called to get a new meter and, in the meantime, bypassed the meter. The heat then started coming back up.

It was 58 degrees in the coldest wing of the facility.

The claimant had no way of knowing immediately what the problem was.

The claimant denied telling the employer that he had come in at 4 a.m. that day. It was Friday, December 17, 2004 that he came in at 4 a.m., not December 22nd.

## FINDINGS OF FACT

The claimant was employed by Green Valley Pavilion from 1998 until June 2004 when he was discharged. A month later he was rehired. He was then discharged on December 22, 2005. At the time of the claimant's separation from employment, he was the director of maintenance and environmental services.

## APPEAL DOCKET NO.:   434077

On December 22, 2005 when the claimant reported to work around 7:15 a.m., he was notified by the charge nurse that a large percentage of the facility was without heat. He and two helpers investigated for an hour or so by checking the boilers and the thermostats. The claimant discovered that the boilers were working but only at 50%. The claimant contacted an outside contractor at around 8:30 a.m. when it became apparent that a meter needed to be put on the gas line, an activity the claimant was not permitted to do. The contractor arrived shortly thereafter and discovered that the gas pressure was low. Chesapeake Utilities was then summoned. They discovered a problem with the meter. They then bypassed the meter temporarily while a new meter was sent for. The heat then began coming back.

The employer takes care of frail elderly persons. Three quarters of the facility had been without heat. The coldest wing got down to 58 degrees.

The administrator of the facility was in a meeting at the time that the claimant began working on the problem. The claimant did not see him.

The claimant was discharged for failing to call in an outside contractor or notify the administrator in a timely fashion.

### CONCLUSIONS OF LAW

### SECTION 3314(2), TITLE 19, DELAWARE CODE, PROVIDES AS FOLLOWS:

> **AN INDIVIDUAL SHALL BE DISQUALIFIED FOR BENEFITS:**
>
> **For the week in which the individual was discharged from the individual's work for just cause in connection with the individual's work and for each week thereafter until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.**

In a discharge case, the employer must show by a preponderance of evidence that the claimant was discharged for just cause in connection with his work.   Just cause exists where the claimant commits a willful or wanton act or engages in a willful or wanton pattern of conduct in violation of the employer's interest, his duty to the employer or his expected standard of conduct.

The issue in this case is whether the claimant's failure to notify the administrator immediately of the heat problem and to contact an outside contractor prior to 8:30 a.m. was willful or wanton misconduct on his part. Certainly, lack of heat in a facility such as that of the employer is a serious matter.   It is not clear why not contacting the

5

## APPEAL DOCKET NO.: 434077

administrator, who was in a meeting, was considered such a serious offense, given the claimant's other obligation to get started on fixing the problem. There was no evidence to contradict the claimant's testimony that he did indeed immediately start trying to find the problem. The question then is whether he spent too much time doing so before finally calling an outside contractor. This tribunal finds that the claimant contacted the outside contractor at the time when it became clear that the gas line was the culprit. The claimant had ruled out other causes, something that the outside contractor would have had to have done, had it been called earlier. Therefore, it is clear that the claimant acted logically and with reasonable diligence to have the problem corrected.    There is insufficient evidence of any willful or wanton misconduct on the claimant's part to establish just cause to discharge. Therefore, the claimant is not disqualified from the receipt of benefits.

### DECISION

The decision of the Claims Deputy is **REVERSED**. The claimant was discharged without just cause in connection with his work. Therefore, the claimant is not disqualified from receiving unemployment insurance benefits pursuant to Section 3314(2), Title 19, Delaware Code and will be eligible to receive benefits for each week of unemployment insurance benefits claimed for which the division determines he meets the eligibility requirements of Section 3315, Title 19, Delaware Code. The division shall issue a determination for any week(s) of unemployment insurance benefits claimed for which the claimant is subsequently deemed ineligible to receive benefits.

Bettina C. Ferguson
Appeals Referee

BCF/

06 - 287

®JS 44 (Rev. 11/04)                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
DONALD F. GLOSSENGER, SR.

**DEFENDANTS**
GREEN VALLEY PAVILION NURSING HOME

**(b)** County of Residence of First Listed Plaintiff    KENT
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    KENT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
TIMOTHY J. WILSON, ESQ.        302 - 777 - 4680
MARGOLIS EDELSTEIN , 1509 GILPIN AVE, WILMINGTON DE 19807

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health |  | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury |  | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General |  | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other |  |  | Under Equal Access |
|  | Employment | ☐ 550 Civil Rights |  |  | to Justice |
|  | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition |  |  | ☐ 950 Constitutionality of |
|  | Other |  |  |  | State Statutes |
|  | ☐ 440 Other Civil Rights |  |  |  |  |

## V. ORIGIN    (Place an "X" in One Box Only)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42  U.S.C  § 2000e  et seq  29  U.S.C.  § 621  et seq., 19  Del. C.  §  711
Brief description of cause:
Employment  Discrimination  based  on  Age, Title VII violation, ADEA violation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE                    DOCKET NUMBER

DATE
05/02/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 6 - 2 8 7

## ACKNOWLEDGMENT
## OF  RECEIPT  FOR AO  FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____ COPIES OF AO FORM 85.

_5/2/06_____
(Date forms issued)

_____
(Signature of Party or their Representative)

_Nick Sexto_
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action